UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CONRAD P. SEGHERS, ET AL.,       )
                                   )
       Plaintiffs,         )
                                   )        CIVIL ACTION NO.
VS.                            )
                                   )        3:06-CV-0279-G
SAMER M. EL BIZRI, ET AL.,       )
                                   )           **ECF**
       Defendants.      )

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendants Samer M. El Bizri ("Bizri"), Codehost, Incorporated ("Codehost"), and Bizri Capital Partners, Incorporated ("BCP") (collectively, "defendants") to dismiss the plaintiffs' complaint pursuant to FED. R. CIV. P. 12(b)(1), (2), (3), (5), and (6). Additionally, the plaintiffs Conrad P. Seghers ("Seghers"), Integral Hedging Offshore, Limited (IHO), and Exponential Returns, L.P. ("Exponential") (collectively, "plaintiffs") have filed a motion for leave to file Conrad Seghers' supplemental declaration, which is opposed by the defendants with a motion to strike. For the reasons stated below, the defendants' motion to

dismiss is granted in part and denied in part.  The remaining two motions are denied as moot.

## I.  BACKGROUND

The plaintiffs filed this case on February 15, 2006, basing jurisdiction on diversity of citizenship.  Docket Sheet; Complaint ¶ 7.  They assert six causes of action against the defendants:  (1) fraud; (2) negligent misrepresentation; (3) breach of contract; (4) money lent; (5) conversion; and (6) indemnification.  Complaint ¶¶ 31, 38, 44, 47, 50, 59.  This dispute arises out of two separate and unrelated transactions.  The first involves a loan agreement; the second involves Bizri's management of hedge funds in which Seghers' companies invested.  Brief in Support of Pre-Answer Motion to Dismiss ("Motion to Dismiss") at 1.

The dispute arising out of Bizri's management of the hedge funds began in 1998.  *Id.* at 1.  At the time, Seghers was managing a series of hedge funds through his company, Integral Investment Management ("IIM").  *Id.*  Seghers, through IIM, hired Bizri and Bizri's company BCP to manage these funds utilizing a proprietary investment strategy -- known as the Risk Adaptive Portfolio Strategy or RAPS -- developed by Bizri.  *Id.*  BCP and IIM entered into a RAPS agreement that became effective on January 1, 2001.  RAPS Agreement at 1, *attached to* Declaration of Conrad P. Seghers ("Seghers Declaration") *as* Exhibit 1.  In accordance with this agreement, BCP established the Galileo Fund, L.P. and Galileo Fund Domestic, L.P.

(collectively, "Galileo") to provide vehicles to facilitate the IIM investments.  Motion to Dismiss at 2.  BCP also entered into an agreement with Morgan Stanley whereby Morgan Stanley provided its services as a registered securities broker for Galileo.  *Id.*  Soon, however, BCP began experiencing problems with Morgan Stanley.  The defendants assert that Bizri would place trades with the Morgan Stanley broker only to discover that he had placed the trade with the wrong option, at the wrong price, at the wrong expiration, or not at all.  *Id.*  Ultimately, these mistakes led to losses in the millions of dollars.  *Id.*

The defendants claim that Seghers was always aware of the problems with the Galileo accounts at Morgan Stanley.  *Id.*  Seghers, however, contends he was ignorant of the errors, and that BCP deliberately misinformed him about the ongoing problems.  Seghers asserts that as a direct result of this misinformation, his reputation has been ruined, and he has been named in several lawsuits and subject to several investigations, requiring him to spend time and money to defend himself.  Complaint ¶ 56.  He seeks to recover these losses.

The dispute over the loan agreement arises out of an entirely different set of facts.  On February 19, 1999, Bizri formed a company known as AnswerBuddy.com.  Complaint ¶ 11.  Its purpose was to develop software for airplane cockpits that could plot the exact location of other planes nearby.  *Id.*  Bizri approached Seghers as a possible investor in the fledgling company.  He informed Seghers that his product

would prevent approximately one in ten plane crashes per five-year period. *Id.* Seghers agreed to invest and signed a letter of intent to purchase 200,000 shares at $5 per share. *Id*. ¶ 14. Bizri insisted, however, that the money be invested through him as a personal loan, and not directly with AnswerBuddy.com. *Id*. ¶ 17. Seghers was always assured that the invested money would be used to develop and market the aviation software. *Id.* ¶ 16.

The loan was to be made in two instalments of $500,000. *Id*. ¶ 18. Each instalment was for a term of two years with ten percent interest. *Id.* The first instalment was transferred to Bizri on October 15, 1999. *Id*. ¶ 19. The second instalment was transferred on April 1, 2000. *Id.* In April of 2001, however, Bizri drastically changed the business plan of AnswerBuddy.com. He changed the name to Codehost and began developing software such as printer drivers rather than the original aviation software. *Id.* ¶ 21. In addition, the plaintiffs allege that the loan proceeds were diverted to Bizri's personal use, specifically a home in California and a Jaguar convertible. *Id.* ¶ 23. The plaintiffs have demanded payment of the principal and interest, but Bizri has refused. *Id.* ¶ 24.

## II. ANALYSIS

### A. Lack of Personal Jurisdiction and Improper Venue

The defendants' motion to dismiss is based on five different grounds. First, the defendants argue that this court lacks personal jurisdiction over them and that Texas

is an improper venue.  Motion to Dismiss at 4, 12.  The defendants therefore move to dismiss the plaintiffs' claims pursuant to FED. R. CIV. P. 12(b)(2) and(3).

1.  *Personal Jurisdiction - The Legal Standard*

Applying state law, this court must first determine whether Texas, the forum state, could assert long-arm jurisdiction.  *Pedelahore v. Astropark, Incorporated*, 745 F.2d 346, 347 (5th Cir. 1984).  Because the Texas long-arm statute confers jurisdiction to the limits of the federal constitution, *Access Telecom, Inc. v. MCI Telecommunications Corporation*, 197 F.3d 694, 716 (5th Cir. 1999), *cert. denied*,531 U.S. 917 (2000); *Hall v. Helicopteros Nacionales de Colombia, S.A.*, 638 S.W.2d 870, 872 (Tex. 1982), *rev'd on other grounds*, 466 U.S. 408 (1984), the court need only concern itself with the federal due process inquiry.  *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); *Wilson v. Belin*, 20 F.3d 644, 647 n.1 (5th Cir.), *cert. denied*, 513 U.S. 930 (1994); *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 17.041 *et seq.* (Vernon 1997) (Texas long-arm statute).

Due process requires the satisfaction of two elements to exercise personal jurisdiction over a non-resident defendant:  (1) the nonresident must have some minimum contact with the forum that results from an affirmative act on his part such that the nonresident defendant could anticipate being haled into the courts of the forum state; and (2) it must be fair or reasonable to require the nonresident to defend the suit in the forum state.  *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 474-

78 (1985); *Gulf Consolidated Services, Inc. v. Corinth Pipeworks, S.A.*, 898 F.2d 1071, 1073 (5th Cir.), *cert. denied*, 498 U.S. 900 (1990).  The Due Process Clause ensures that persons have a "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King*, 471 U.S. at 472 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring)).

Here, the defendants argue that they have not established the required "minimum contacts" with the forum state.  Motion to Dismiss at 5.  The minimum contacts test, however, need not be considered in this case.  Personal jurisdiction is a waivable right.  *Insurance Corporation of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702-703 (1982).  As a result, "a variety of legal arrangements" exist by which a litigant may consent to personal jurisdiction.  *Id.* at 703.  One such legal arrangement is a forum selection clause, so long as it has been freely negotiated and is not unreasonable and unjust.  *M/S Bremen v. Zapata Off-Shore Company*, 407 U.S. 1, 15 (1972).  Here, the parties signed agreements regarding both the loan and Bizri's management of the hedge funds. Both of these agreements contain clauses selecting Texas as the appropriate forum for disputes.

### 2.  *The Loan Agreement*

The loan agreement, signed on October 15, 1999, by both Seghers and Bizri, includes a provision entitled "Governing Law; Venue."  Loan Agreement at 2, *attached to* Segher Declaration in Plaintiff's Response to Defendant's Pre-Answer Motion to

Dismiss *as* Exhibit 3. This provision states, "THIS AGREEMENT IS MADE AND IS

PERFORMABLE IN DALLAS COUNTY, TEXAS, AND SHALL BE GOVERNED

BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE

OF TEXAS." *Id.* It is clear from this provision that the parties intended Texas to

provide the appropriate venue and governing law. There being no suggestion that this

clause was not freely negotiated or that it is unreasonable and unjust, it must be given

effect. *The Bremen*, 407 U.S. at 15.

Due to this provision, the defendants' argument that they are not subject to

personal jurisdiction regarding the dispute over the loan agreement is unfounded.

The purpose of minimum contacts is to "give[] a degree of predictability to the legal

system" and "allow[] potential defendants to structure their primary conduct with

some minimum assurance as to where that conduct will and will not render them

liable to suit." *World Wide Volkswagen Corporation v. Woodson*, 444 U.S. 286, 297

(1980). Here, it seems clear that the defendants could easily have anticipated being

haled into court in Texas, the state which they had agreed would provide the proper

venue and governing law. The defendants have thus had fair warning that their

activities arising out of the loan agreement with the plaintiffs could subject them to

personal jurisdiction in Texas. It is fair and reasonable to require the defendants to

defend here. The requirements of due process are therefore satisfied, and the

defendants' motion to dismiss the plaintiffs' loan agreement claims for lack of personal jurisdiction and improper venue are denied.

### 3.   *The RAPS Agreement*

Similarly, the RAPS agreement and the Declaration of Assets Agreement, which Bizri signed, have clauses almost identical to the loan agreement's forum selection provision.  RAPS Agreement at 20; Declaration of Assets Agreement at 8, *attached to* Declaration of Conrad Seghers *as* Exhibit 2.  Thus, the defendants also consented to venue and personal jurisdiction in Texas regarding any disputes arising under the RAPS agreement.  For the same reasons given above, the requirements of due process are satisfied.  The motions to dismiss the plaintiffs' claims regarding the RAPS agreement, pursuant to FED. R. CIV. P. 12(b)(2) and FED. R. CIV. P. 12(b)(3), are therefore denied.

### B.   Statute of Limitations and Lack of Subject Matter Jurisdiction

The defendants next argue that the complaint should be dismissed under FED. R. CIV. P. 12(b)(6) because all claims are barred by the statute of limitations.  Motion to Dismiss at 9.  The defendants also argue that the case should be dismissed for lack of subject matter jurisdiction, pursuant to FED. R. CIV. P. 12(b)(1), since the amount in controversy requirement cannot be met by barred claims.  *Id.* at 12.  Because the outcome of the 12(b)(1) motion is entirely dependent on the outcome of the 12(b)(6) motion, only the 12(b)(6) motion will be discussed.

1.  *12(b)(6) -- The Legal Standard*

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  There are two primary principles that guide the court's determination of whether dismissal under Rule 12(b)(6) should be granted.  First, a motion under Rule 12(b)(6) should be granted only if it appears beyond doubt that the nonmovants could prove no set of facts in support of their claims that would entitle them to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Leffall v. Dallas Independent School District*, 28 F.3d 521, 524 (5th Cir. 1994); see also *Kaiser Aluminum & Chemical Sales, Incorporated v. Avondale Shipyards, Incorporated*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing 5B WRIGHT & MILLER § 1357 at 598 (1969), for the proposition that "the motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted"), *cert. denied*, 459 U.S. 1105 (1983).  Second, the court must accept all well-pleaded facts as true and view them in the light most favorable to the nonmovants.  See *Capital Parks, Incorporated v. Southeastern Advertising and Sales System, Inc.*, 30 F.3d 627, 629 (5th Cir. 1994); *Norman v. Apache Corporation*, 19 F.3d 1017, 1021 (5th Cir. 1994); *Chrissy F. by Medley v. Mississippi Department of Public Welfare*, 925 F.2d 844, 846 (5th Cir. 1991).  However, conclusory allegations and unwarranted factual deductions will not suffice to avoid a motion to dismiss.  *United States ex rel. Willard v. Humana Health Plan of Texas Incorporated*, 336 F.3d 375, 379 (5th Cir. 2003).  In addition, a court

must not look beyond the pleadings when determining whether a complaint states a claim upon which relief may be granted.  *Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Incorporated*, 690 F.2d 489, 499-500 (5th Cir. 1982), *cert. denied*, 464 U.S. 932 (1983).

If it appears that a more carefully drafted pleading might state a claim upon which relief could be granted, the court should give the claimants an opportunity to amend their claim rather than dismiss it.  *Friedlander v. Nims*, 755 F.2d 810, 813 (11th Cir. 1985); *Taylor v. Dallas County Hospital District*, 976 F.Supp. 437, 438 (N.D. Tex. 1996).  Furthermore, leave to amend a pleading should be freely given and should be granted unless there is some justification for refusal.  *Willard*, 336 F.3d at 386.

## 2. *Fraud -- The Loan Agreement*

Seghers asserts two counts of fraud.  Complaint ¶¶ 31, 54.  The first fraud claim concerns the loan agreement.  This claim is based on the plaintiffs' allegation that Bizri made fraudulent representations in an effort to induce Seghers to invest in AnswerBuddy.com.  *Id.* ¶ 31.  Specifically, the plaintiffs assert that they were falsely informed that AnswerBuddy.com was valued at $50,000,000 and that the loan proceeds were to be used exclusively for the business and not for any personal use by Bizri.  *Id.*  In addition, they allege that they were falsely informed that the company was in negotiations with the Federal Aviation Association and the National Travel

Safety Board, and that Seghers would soon be provided with the company's business plan and subscription documents.  *Id.*

The statute of limitations governing fraud claims is four years.  TEX. CIV. PRAC. & REM. CODE § 16.004(a)(4) (Vernon 2002).  A fraud cause of action does not accrue until the fraud is discovered or could have been discovered through reasonable diligence.  See *Computer Associates International v. Altai, Inc.*, 918 S.W.2d 453, 455-56 (Tex. 1996).  Thus, for Seghers' claim to survive the statute of limitations, Bizri's fraud must not have been discoverable through reasonable diligence before February 15, 2002 -- four years before the suit was filed.  *Id.*

Seghers argues that although he had long believed that Bizri cheated him in the loan transaction, Bizri's fraud was first discovered in March 2004.  Response at 4-5.  But Seghers admits that this recently discovered fraud related only to his fraud claim regarding the RAPS agreement and not to the loan.  Seghers Declaration ¶¶ 14, 15.  In fact, with reference to the loan agreement, Seghers states that he "viewed Bizri as having cheated me in the loan transactions, and I therefore sued him in early 2002."  Seghers Declaration ¶ 14.  It is thus clear that Seghers was aware of Bizri's fraud against him in the loan transaction at least by early 2002, when he filed suit for the first time.  *Id.*  As a result, the four year statute of limitations now bars Seghers' fraud claim regarding the loan transaction.  TEX. CIV. PRAC. & REM. CODE § 16.004

(Vernon 2002).  Accordingly, the motion to dismiss the fraud claim regarding the loan agreement is granted pursuant to FED. R. CIV. P. 12(b)(6).[1]

### 3.  *Fraud -- The RAPS Agreement*

Seghers also asserts a fraud claim regarding the RAPS agreement.  Seghers argues that the defendants deliberately misinformed him and his companies, IHO and Exponential, about the problems that arose with Morgan Stanley and the trading strategy.  Complaint ¶ 54.  Because the four year statute of limitations applies to this fraud claim as well, TEX. CIV. PRAC. & REM. CODE § 16.004, it must be demonstrated that the claim was not discoverable before February 15, 2002.  See *Computer Associates International*, 918 S.W.2d at 455-56.

Seghers asserts that he only learned of the fraud in March of 2004, when Bizri agreed with the SEC to be enjoined from the securities business.  Response at 5.  The defendants, however, argue that the plaintiffs have known of any fraud regarding the RAPS agreement since at least 2001, when Seghers' company, IH, was sued by the Art Institute of Chicago for the same incidence of fraud.  Motion to Dismiss at 11.  A review of the pleadings in the case, however, does not reveal that Seghers was aware

---

[1]      "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleading that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003), *cert. denied*, 540 U.S. 1161 (2004).  See also *Taylor v. Books A Million, Inc.*, 296 F.3d 376 (5th Cir. 2002) (affirming dismissal of Title VII claim under Rule 12(b)(6) for failure to bring suit within 90 days after receipt of right to sue letter), *cert. denied*, 537 U.S. 1200 (2003).

that any fraud had been committed upon him or his companies.  He merely denied

that he had been involved in any fraud upon the Art Institute.  Since the court must

take all well-pleaded facts as true and view them in the light most favorable to the

nonmovant, the second fraud claim is not barred by the statute of limitations.  See

*Capital Parks, Incorporated*, 30 F.3d at 629.

However, both fraud claims must be dismissed for a different reason: neither

claim meets the heightened pleading requirements for causes of action based on

fraud.  *See* FED. R. CIV. P. 9(b).[2]  Although under the general pleading requirements of

FED. R. CIV. P. 8(a) the complaint need only contain "a short and plain statement of

the claim," a claim for fraud must meet the more stringent requirements of FED. R.

CIV. P. 9(b).  Under Rule 9(b), the circumstances constituting the alleged fraud "shall

be stated with particularity."  FED. R. CIV. P. 9(b).  The elements of a fraud claim are:

(1) a misstatement or omission (2) of material fact (3) made with the intent to

defraud the plaintiff (4) on which the plaintiff relied, and (5) which proximately

caused the plaintiff's injury.  *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177

---

[2]       Although this deficiency is not addressed in the defendants' motion to
dismiss, the court is authorized to consider the sufficiency of the complaint on its
own initiative.  *Guthrie v. Tifco Industries*, 941 F.2d 374, 379 (5th Cir. 1991), *cert.
denied*, 503 U.S. 908 (1992); *Bazrowx v. Scott*, 136 F.3d 1053, 1054-55 (5th Cir.)
(noting that since a district court can dismiss an action on its own motion under Rule
12(b)(6) "as long as the procedure employed is fair," the lower court's dismissal of an
action *without* prejudice ameliorated any error that the court made in dismissing the
plaintiff's suit without notice or opportunity to amend), *cert. denied*, 525 U.S. 865
(1998).

(5th Cir.), *cert. denied*, 522 U.S. 966 (1997).  Pleading fraud with particularity requires that a plaintiff specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.  *Id.*; see also *Benchmark Electronics, Inc. v. J.M. Huber Corporation*, 343 F.3d 719, 724 (5th Cir. 2003) (stating that Rule 9(b) requires the plaintiff to lay out "the who, what, when, where, and how" of the alleged fraud); *United States ex rel. Russell v. Epic Healthcare Management Group*, 193 F.3d 304, 308 (5th Cir. 1999).  If a plaintiff's fraud claim is not pleaded with particularity, however, the plaintiff should be given an opportunity to amend.  *Hart v. Bayer Corporation*, 199 F.3d 239, 248 n.6 (5th Cir. 2000).  Here, the plaintiffs have met only one of these requirements.

The original complaint alleges only that Bizri made representations to Seghers that are untrue.  It goes on to state generally what the fraudulent representations were, but never identifies the speaker or states when and where the statements were made or what exactly was said.  Complaint ¶¶ 15, 22, 23, 26, 31, 32, 54.  The complaint also never explains why the statements made by the defendants are untrue. *Id.*  Thus, the plaintiffs failed to meet the requirements for pleading a cause of action based on fraud.  *Williams*, 112 F.3d at 177.  "A dismissal for failure to comply with Rule 9(b) is a dismissal on the pleadings for failure to state a claim."  *United States ex rel. Russell*, 193 F.3d at 308.  Thus, the plaintiffs' fraud claims are dismissed pursuant

to FED. R. CIV. P. 12(b)(6), with leave, however, to file an amended complaint --
within the time limits set forth below -- to cure these deficiencies.

### 4.   *Negligent Misrepresentation*

The plaintiffs' next claim is based on the defendants' negligent
misrepresentation.  For these claims, courts have applied either the lenient Rule 8
pleading requirements or the more strict Rule 9(b) criteria.  See *American Realty Trust,
Incorporated v. Hamilton Lane Advisors, Incorporated*, 115 Fed. Appx. 662, 668-69 (5th
Cir. 2004) (holding that this court improperly dismissed a negligent
misrepresentation claim on the basis that it did not satisfy Rule 9(b) pleading
requirements); *General Electric Capital Corporation v. Posey*, 415 F.3d 391, 396-97 (5th
Cir. 2005) (applying Rule 8 pleading requirements to negligent misrepresentation
claim); but see *Benchmark Electronics*, 343 F.3d at 723 (applying Rule 9(b) because
plaintiff's "fraud and negligent misrepresentation claims [were] based on the same set
of alleged facts"); see also *Williams*, 112 F.3d at 177.  The rule has developed in the
Fifth Circuit that a plaintiff's claims must be dismissed if "the inadequate fraud
averment is so intertwined with the negligent misrepresentation claim that it is not
possible to describe a simple redaction that removes the inadequate fraud averment
while leaving behind a viable negligent misrepresentation claim."  See *Nazareth
International, Inc. v. J.C. Penney Corporation, Inc.*, No. 3:04-CV-1265-M, 2005 WL
1704793, at *3-4 (N.D. Tex. July 19, 2005) (Lynn, J.) (discussing evolution of

pleading requirements for negligent misrepresentation after *Benchmark Electronics*, 343 F.3d 719, and *American Realty*, 115 Fed. Appx. 662).

As stated in the complaint, this claim arises out of the same facts as the fraud claim.  The plaintiffs essentially reassert their argument that Bizri made false representations regarding both the loan agreement and the RAPS agreement. Complaint ¶ 39.  Thus, for the same reasons stated above regarding the plaintiffs' fraud claims, the pleadings fail to meet Rule 9(b)'s requirement of particularity.  The plaintiffs' negligent misrepresentation claim is therefore dismissed pursuant to FED. R. CIV. P. 12(b)(6), with leave to replead.

5. *Breach of Contract*

The plaintiffs' next cause of action is based on the defendants' breach of the loan agreement.  Complaint ¶ 43.  Breach of contract claims are subject to a four year statute of limitations.  *Kansa Reinsurance Company v. Congressional Mortgage Corporation of Texas*,  20 F.3d 1362, 1369 (5th Cir. 1994).  A contract claim generally accrues when the contract is breached.  *Hoover v. Gregory*, 835 S.W.2d 668, 677 (Tex. App. -- Dallas 1992, writ denied).  "A breach occurs when a party fails to perform a duty required by the contract."  *Id.*  In this situation, then, Bizri breached the contract when he failed to repay the loan on the date it became due.

There were two loans involved in the loan agreement, each for $500,000 and with a two-year term.  Loan Agreement at 1.  The first loan was made on October 15,

1999; the second on April 1, 2000.  *Id.*  Thus, the first loan became due on October 15, 2001 and the second became due on April 1, 2002.  Since the plaintiffs assert that neither has been paid, the contracts were allegedly breached on these two due dates.  This suit was filed on February 15, 2006, more than four years after October 15, 2001, but less than four years from April 1, 2002.  Therefore the plaintiffs may maintain the breach of contract claim only with respect to the second loan.  The motion to dismiss is granted with respect to the first loan and denied with respect to the second.

### 6.  *Money Lent*

The plaintiffs' fourth cause of action is for the $1,000,000 lent to the defendants, as well as the accompanying interest.  Complaint ¶¶ 47, 48.  This is essentially the same claim as breach of contract.  It is merely an alternate method of requiring the defendants to pay their debt.  Debt claims are subject to a four year statute of limitations in Texas.  TEX. CIV. PRAC. & REM. CODE § 16.004 (Vernon 2002).  In general, a cause of action accrues "when facts come into existence which authorize a claimant to seek a judicial remedy."  *Robinson v. Weaver*, 550 S.W.2d 18, 19 (Tex. 1977).  Here, that time is the date the loans matured and became due.  As stated above, the two loans became due on October 15, 2001 and April 1, 2002, respectively.  Thus, under the four year statute of limitations, the plaintiffs may maintain their action for money lent regarding the second loan but not the first.  The

motion to dismiss is therefore granted with respect to the first loan and denied with respect to the second.

7. *Conversion*

The plaintiff's fifth cause of action is based on Bizri's use of the loaned funds for his personal use -- the purchase of a home and vehicle -- when it was intended exclusively for the use and benefit of AnswerBuddy.com.  Complaint ¶ 50. Conversion actions are subject to a two year statute of limitations.  TEX. CIV. PRAC. & REM. CODE § 16.003(a) (Vernon 2002).  The accrual of a cause of action for conversion occurs when the owner of the property had notice of the conversion or, by the use of reasonable diligence, would have known of the conversion.  *Las Mendozas, Inc. v. Powell*, 368 F.2d 445, 450 (5th Cir. 1966) (*citing* 14 Tex. Jur. 2d 65).  Here, Seghers filed suit against Bizri in early 2002 for cheating him in the loan transaction. Consequently, it is clear that he had notice of the conversion (or should have, through the use of reasonable diligence) much longer than two years ago.  Thus, the

statute of limitations bars this claim as well.[3]  Tᴇx. Cɪv. Pʀᴀᴄ. & Rᴇᴍ. Cᴏᴅᴇ § 16.003.

## C.  Improper Service of Process

The defendants' next ground for dismissal is based on the allegedly improper service of process on Bizri.  Motion to Dismiss at 7-9.  Bizri asserts that he was served with process while he was in the State of Texas for the sole purpose of testifying in a Securities and Exchange Commission ("SEC") enforcement action against Seghers -- a legal proceeding unrelated to the case *sub judice*.  *Id.* at 8.  As a result, the defendants argue, the suit must be dismissed for improper service of process under Fᴇᴅ. R. Cɪv. P. 12(b)(5).

Under federal law, "witnesses, coming from another state or jurisdiction, are exempt from the service of civil process while in attendance upon court, and during a reasonable time in coming and going."  *Stewart v. Ramsay*, 242 U.S. 128, 129 (1916).  The purpose behind this rule is that "[c]ourts of justice ought everywhere to be open, accessible, free from interruption, and to cast a perfect protection around every man who necessarily approaches them."  *Id.* (quoting *Halsey v. Stewart*, 4 N.J.L. 366, 367

---

[3]      Moreover, the conversion claim fails as a matter of law for another reason not addressed by the parties.  Conversion claims for the recovery of money may only be maintained if the money can be identified as a specific chattel.  *Eckman v. Centennial Savings Bank*, 757 S.W.2d 392, 398 (Tex. App.--Dallas 1988, writ denied).  When an action for indebtedness can be discharged by the payment of money generally, an action for conversion is inappropriate.  *Id.*  In *Eckman*, it was held that a construction loan did not constitute a specific chattel.  *Id.*  Because there is little difference between a construction loan and a personal loan to develop a company, the plaintiffs' claim for conversion must be dismissed for failure to state a claim.

(N.J. 1817)).  This has been referred to as "wholesome public policy," *Lovejoy v. Foster*, 77 F. Supp. 414, 415 (N.D. Tex. 1948), and must therefore be upheld.

Here, the parties dispute exactly where Bizri was served with process.  The defendants contend that Bizri was served in the hallway outside the courtroom. Motion to Dismiss at 8-9.  The plaintiffs argue he was just outside the courthouse, "outside of any secured area."  Seghers Declaration ¶ 28.  Even if the plaintiffs' assertion is correct, however, stepping out of the courthouse is surely within the "reasonable time for coming and going" afforded by *Stewart*.  242 U.S. at 129.  In *Stewart*, the defendant Ramsay was served with process while returning from the courtroom after testifying.  *Id.* at 128.  This was held to be within the period of a "reasonable time for coming and going."  *Id.* at 129.  Here, Bizri was also just leaving the courthouse after testifying, as the plaintiffs admit.  Thus, it seems clear that *Stewart* renders the plaintiffs' service of process upon Bizri improper.

It is not clear, however, that the motion to dismiss must be granted as a result of the improper service of process.  Courts in this circuit have suggested that plaintiffs should be afforded additional time to correct a problem of improper service of process.  See *Lovejoy*, 77 F. Supp. at 415; *Clayton v. Prudential Insurance Company of America*, 554 F. Supp. 628, 630 (S.D. Tex. 1983).  *Clayton* held that although there had never been proper service upon the individual defendants, the plaintiff had an additional twenty days to effectuate proper service of process upon them, and only

then would the complaint be dismissed.  554 F. Supp. at 630.  *Lovejoy* suggests that plaintiffs must have an opportunity to inquire into the exact reason for a defendant's presence in the state where he is served with process.  77 F. Supp. at 415.  Here, the plaintiffs request additional time to carry out both these tasks.  The plaintiffs contend that Bizri's presence in Dallas, Texas was not for the sole purpose of testifying in the SEC case and that further discovery is necessary to determine the exact purpose of the visit.  Response at 4.  They alternatively request additional time to serve process properly.  Following the precedent of *Clayton*, the plaintiffs are afforded twenty days to complete either of these two tasks.  Failing that, the claims will be dismissed.

    D.  <u>Motion for Leave to File Supplement to Conrad Seghers' Declaration</u>

    The plaintiffs have filed a motion for leave to supplement Conrad Seghers' declaration with a document overlooked in the "rush to file the Response papers." Motion for Leave to File Conrad Seghers Supplemental Declaration ("Motion for Leave") at 2.  This supplement is a Notice of Motion to Dismiss filed by Bizri in a California lawsuit that involved the same issues as the case *sub judice*.  *Id.*  The plaintiffs offer the document in an effort to disprove the defendants' contention that personal jurisdiction is lacking in this case.  *Id.*  In it, the defendants highlight the forum selection clauses in the RAPS and loan agreements and request that the California court dismiss the claims for lack of jurisdiction, since Dallas, Texas is clearly the only proper forum.  Bizri's Motion to Dismiss (Attached to Motion for

Leave) at 1-2.  The defendants counter this motion for leave with a motion to strike the supplement.

While Bizri's motion to dismiss from the California lawsuit confirms that Dallas is the proper forum, it is not necessary to the decision of the instant motion to dimiss.  It is clear that personal jurisdiction is proper in this case even without consideration of the motion to dismiss from California.  Thus, both motions regarding the supplement to the Seghers Declaration are denied as moot.

### III.  CONCLUSION

For the reasons stated above, the motion to dismiss is **GRANTED** in part and **DENIED** in part.[4]  Specifically, the defendants' motion to dismiss the plaintiffs' breach of contract and money lent claims on grounds of limitations is **GRANTED** as to the first loan, but **DENIED** as to the second loan.  For the same reasons, the plaintiffs' fraud and negligent misrepresentation claims are **GRANTED** as to the loan agreement, but **DENIED** as to the RAPS agreement.  The motion to dismiss the conversion claim is **GRANTED** on statute of limitations grounds as well.  The motion to supplement and motion to strike are **DENIED** as moot.

---

[4]     Because the court addressed dismissal under Rule 12(b)(6) rather than Rule 12(b)(1) and is giving the plaintiffs an opportunity to amend their complaint, the court will reserve decision on diversity of citizenship jurisdiction until after the repleading, if any, of the plaintiffs' claims.

Further, the plaintiffs' fraud and negligent misrepresentation claims are

**DISMISSED** for failure to comply with Rule 9(b)'s particularity requirements.

However, because it appears that a more carefully drafted complaint might state

claims upon which relief could be granted, the plaintiffs shall have leave to

electronically file and serve, not later than **August 4, 2006**, an amended complaint

to remedy the Rule 9(b) deficiencies in their pending complaint; if no such amended

complaint is filed and served, these claims will be deemed dismissed without further

notice.  If the plaintiffs duly amend their complaint, the defendants may reassert

their motion to dismiss if they believe that the amended complaint fails to cure the

defects in the original complaint noted above.

Finally, the plaintiffs are **GRANTED** twenty days from the date of this

memorandum opinion and order to ascertain whether the previous service of process

was accomplished properly and, if it was not, to effect proper service upon the

defendants.

**SO ORDERED**.

July 17, 2006.

_____
A. JOE FISH
CHIEF JUDGE