UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CONRAD P. SEGHERS, ET AL.,            )
                                      )
            Plaintiffs,               )
                                      )        CIVIL ACTION NO.
VS.                                   )
                                      )        3:06-CV-0279-G
SAMER M. EL BIZRI, ET AL.,            )
                                      )            **ECF**
            Defendants.               )

## MEMORANDUM OPINION AND ORDER

Before the court is the motion by the defendants Samer M. El Bizri ("Bizri"),

Codehost, Incorporated f/d/b/a AnswerBuddy.com ("Codehost"), and Bizri Capital

Partners, Incorporated ("BCP") (collectively, "the defendants") to dismiss the

plaintiffs' first amended complaint pursuant to FED. R. CIV. P. 12(b)(2) and (6).  For

the reasons stated below, the defendants' motion is granted in part and denied in

part.

## I.  BACKGROUND

Conrad P. Seghers ("Seghers"), Integral Hedging Offshore, Ltd. ("IHO"), and

Exponential Returns, L.P. ("Exponential") (collectively, "the plaintiffs") filed this first

amended complaint following the court's memorandum opinion and order granting in part and denying in part the defendants' motion to dismiss the plaintiffs' original complaint pursuant to FED. R. CIV. P. 12(b)(1), (2), (3), (5), and (6).  Memorandum Opinion and Order, July 17, 2006 ("Order").  While that order contained a comprehensive description of the facts, a briefer recitation of the factual allegations and procedural background will suffice here.  The plaintiffs' original complaint asserted claims of (1) fraud; (2) negligent misrepresentation; (3) breach of contract; (4) money lent; (5) conversion; and (6) indemnification.  Complaint ¶¶ 31, 38, 44, 47, 50, 59.  The dispute arises out of two separate and unrelated transactions:  (1) a loan agreement between Exponential and Bizri and (2) an agreement between BCP and Integral Investment Management, LLC ("IIM") to manage certain hedge funds.  Brief in Support of Pre-Answer Motion to Dismiss ("First Motion to Dismiss") at 1-4.

The hedge fund management dispute began in 1998, when Seghers, on behalf of IIM, hired BCP to manage certain hedge funds utilizing a proprietary investment strategy -- known as the Risk Adaptive Portfolio Strategy or RAPS -- developed by Bizri.  *Id.*  BCP and IIM entered into a RAPS agreement that became effective on January 1, 2001.  RAPS Agreement at 1, *attached to* Declaration of Conrad P. Seghers ("Seghers Declaration") *as* Exhibit 1, *attached to* Plaintiffs' Appendix in Support of Their Response to Defendants' Motion to Dismiss First Amended Complaint ("Plaintiff's Appendix").  In accordance with this agreement, BCP established two

limited partnerships and entered into an agreement with Morgan Stanley, whereby Morgan Stanley provided its services as a registered securities broker.  First Motion to Dismiss at 2.  Soon, however, BCP began experiencing problems with Morgan Stanley.  The defendants assert that Bizri would place trades with the Morgan Stanley broker only to discover that he had placed the trade with the wrong option, at the wrong price, at the wrong expiration, or not at all.  *Id.*  Ultimately, these mistakes led to losses totaling millions of dollars.  *Id.*

The defendants claim that Seghers was always aware of the problems with the accounts at Morgan Stanley.  *Id.*  Seghers, however, contends he was ignorant of the errors and that BCP deliberately misinformed him about the ongoing problems. Seghers asserts that as a direct result of this misinformation, his reputation has been ruined, and he has been named in several lawsuits and subject to several investigations, requiring him to spend time and money to defend himself.  First Amended Complaint ("Amended Complaint") ¶ 59.  He seeks to recover these losses.

The dispute over the loan agreement arises out of an entirely different set of facts.  On February 19, 1999, Bizri formed a company known as AnswerBuddy.com for the purpose of developing certain aviation related software.  *Id.* ¶ 12.  Bizri approached Seghers as a possible investor; Seghers, on behalf of Exponential, agreed and signed a letter of intent to purchase 200,000 shares at $5 per share.  *Id*. ¶ 15. The money, however, was paid directly to Bizri as a personal loan, not with

AnswerBuddy.com. *Id*. ¶ 18. According to the plaintiffs, Seghers was always assured that the invested money would be used to develop and market the aviation software. *Id.* ¶ 17.

The loan was to be made in two instalments of $500,000 -- one on October 15, 1999 and the other on April 1, 2000. *Id*. ¶ 20. Each instalment was for a term of two years with ten percent interest. *Id.* ¶ 19. In April 2001, however, Bizri drastically deviated from the original business plan of AnswerBuddy.com, changing the name to Codehost and developing software unrelated to the initially planned aviation software. *Id.* ¶ 22. The plaintiffs further allege that the loan proceeds were diverted to Bizri's personal use, specifically, the purchase of a home in California and a Jaguar convertible. *Id.* ¶ 24. The plaintiffs have demanded payment of the principal and interest, but Bizri has refused. *Id.* ¶ 25.

This court previously granted a motion to dismiss on the plaintiffs' breach of contract and money lent claims for the first instalment of the AnswerBuddy.com loan, but denied the motion as to the second instalment, finding that the statute of limitations had not run with regards to the second instalment. Additionally, the plaintiffs' conversion claim was dismissed on limitations grounds. The court also granted the first motion to dismiss on the plaintiffs' fraud and negligent misrepresentation claims for failure to meet the pleading requirements of FED. R. CIV. P. 9(b) but granted leave for the plaintiffs to re-plead. On August 4, 2006, the

plaintiffs filed their first amended complaint, alleging two counts of fraud, breach of contract (as to the second instalment on the AnswerBuddy.com loan), money lent (as to the second instalment), and indemnification. *See generally* Amended Complaint. The instant motion to dismiss followed.

At the close of briefing on this motion to dismiss, the court reviewed the defendants' reassertion of their personal jurisdiction challenge. The plaintiffs, in response to that challenge, relied solely on this court's prior memorandum opinion and order which found that defendants Codehost and BCP had waived their personal jurisdiction challenges through provisions in the loan agreement and the RAPS agreement, respectively. The crux of Codehost's and BCP's challenge to the existence of personal jurisdiction is that the parties to the contract and the parties to this litigation are different. That is, the loan agreement was between Exponential and Bizri in his personal capacity; Codehost was not a party to that loan agreement. The RAPS agreement was between IIM and BCP, but IIM is not a party to this suit. Finding that these personal jurisdiction challenge warranted further consideration, the court vacated its prior memorandum opinion and order to the extent that it concluded personal jurisdiction existed on the basis of these contracts but granted the parties an opportunity to supplement their briefing on the personal jurisdiction issue. The plaintiffs filed a supplemental response to the defendants' motion to dismiss, and the defendants have filed a reply to that supplemental response.

## II. ANALYSIS

The defendants' motion to dismiss is based on FED. R. CIV. P. 12(b)(2) and (6). The defendants argue that this court lacks personal jurisdiction over Codehost and BCP. As with the prior motion to dismiss, the defendants assert in the instant motion that the plaintiffs' fraud claims must be dismissed pursuant to FED. R. CIV. P. 12(b)(6) for failure to plead with specificity. The defendants further argue that the breach of contract claim and the money lent claim against Codehost and BCP must be dismissed for failure to state a claim on which relief can be granted. Additionally, the defendants argue that the plaintiffs' fraud claim regarding the second instalment of the AnswerBuddy.com loan, the breach of contract claim, and the money lent claim are barred by limitations. Finally, the defendants assert that Exponential lacks standing to sue.[1]

---

[1]     This final argument is not addressed in more detail below as the plaintiffs have provided sufficient evidence to counter this assertion. The defendants argue that Exponential lacks standing to sue because its corporate status was listed as "cancelled" and it became "inactive" on February 14, 2001. *See* Defendants' Brief in Support of Their Pre-Answer Motion to Dismiss First Amended Complaint ("Motion to Dismiss") at 13-14. However, this challenge is more aptly defined as a challenge to Exponential's capacity to sue. See *Friends of the Earth, Inc. v. Chevron Chemical Company*, 129 F.3d 826, 829 (5th Cir. 1997) (Barksdale, J., dissenting). Under FED. R. CIV. P. 17(b), a corporation's capacity to sue or be sued is determined first by the state of incorporation and second by the forum state in which the federal court is situated. See also *Miner v. Punch*, 838 F.2d 1407, 1409-10 (5th Cir. 1988). In the instant case, either inquiry under Rule 17(b) results in the application of Texas law. Whatever Exponential's status may have been at the time suit was initiated, sufficient evidence is now before the court indicating that Exponential has the proper corporate status to bring suit. *See* Certificate from Office of Secretary of State, August 31,

(continued...)

- 6 -

A.  <u>Lack of Personal Jurisdiction</u>

1.  *The Factual Standard:  A* Prima Facie *Case*

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident.  *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.), *cert. denied*, 513 U.S. 930 (1994); *Gardemal v. Westin Hotel Company*, 186 F.3d 588, 592 (5th Cir. 1999).  If the district court chooses to decide the matter without an evidentiary hearing, the plaintiff may meet his burden by presenting a *prima facie* case for personal jurisdiction.  *Wilson*, 20 F.3d at 648; *Gardemal*, 186 F.3d at 592.

The court will take the allegations of the complaint as true, except where they are controverted by opposing affidavits, and all conflicts in the facts are resolved in favor of the plaintiff.  *Wilson*, 20 F.3d at 648; *Gardemal*, 186 F.3d at 592.  In making its determination, the court may consider affidavits, interrogatories, depositions, oral testimony, or any combination of recognized discovery methods.  *Allred v. Moore & Peterson*, 117 F.3d 278, 281(5th Cir. 1997), *cert. denied*, 522 U.S. 1048 (1998); *Thompson v. Chrysler Motors Corporation*, 755 F.2d 1162, 1165 (5th Cir. 1985).

---

[1](...continued)
2006, *attached to* Declaration of Conrad P. Seghers in Response to Defendants' Motion to Dismiss the First Amended Complaint, *attached to* Plaintiff's Appendix *as* Exhibit A.

2.   *The Legal Standard*

A federal district court may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state permits the exercise of personal jurisdiction over the defendant; and (2) the exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002).   A defendant is amenable to the personal jurisdiction of a federal court sitting in diversity to the same extent that he would be amenable to the jurisdiction of a state court in the same forum.   *Pedelahore v. Astropark, Inc.*, 745 F.2d 346, 347 (5th Cir. 1984).   Applying state law, this court must first determine whether Texas, the forum state, could assert long-arm jurisdiction.   *Id*.   Because the Texas long-arm statute confers jurisdiction to the limits of the federal constitution, *Access Telecom, Inc. v. MCI Telecommunications Corporation*, 197 F.3d 694, 716 (5th Cir. 1999), *cert. denied*, 531 U.S. 917 (2000); *Hall v. Helicopteros Nacionales de Colombia, S.A.*, 638 S.W.2d 870, 872 (Tex. 1982), *rev'd on other grounds*, 466 U.S. 408 (1984), the court need only concern itself with the federal due process inquiry.   *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); *Wilson*, 20 F.3d at 647 n.1; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 17.041 *et seq.* (Vernon 1997) (Texas long-arm statute).

- 8 -

3.  *Due Process Requirements*

Due process requires the satisfaction of two elements to exercise personal jurisdiction over a non-resident defendant:  (1) the nonresident must have some minimum contact with the forum that results from an affirmative act on his part such that the nonresident defendant could anticipate being haled into the courts of the forum state; and (2) it must be fair or reasonable to require the nonresident to defend the suit in the forum state.  *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 474-78 (1985); *Gulf Consolidated Services, Inc. v. Corinth Pipeworks, S.A.*, 898 F.2d 1071, 1073 (5th Cir.), *cert. denied*, 498 U.S. 900 (1990).  The Due Process Clause ensures that persons have a "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign."  *Burger King*, 471 U.S. at 472 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring)).

To establish minimum contacts with the forum, a nonresident defendant must do some act by which he "purposefully avails [him]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Burger King*, 471 U.S. at 474-75 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  However, the unilateral activity of one asserting a relationship with the nonresident defendant does not satisfy this requirement.  *Burger King*, 471 U.S. at 474 (quoting *Hanson*, 357 U.S. at 253); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) (citing *Kulko v. California Superior Court*, 436 U.S. 84

(1978); *Hanson*, 357 U.S. at 253).  In determining whether the exercise of jurisdiction is appropriate, the Supreme Court has focused less on presence in the forum state as a means to establish jurisdiction and looked increasingly to whether a defendant's contacts with the forum state make it reasonable to require the defendant to defend the particular suit in that forum.  *Quill Corporation v. North Dakota*, 504 U.S. 298, 307 (1992).

Two types of *in personam* jurisdiction may be exercised over a nonresident defendant:  specific jurisdiction and general jurisdiction.  Specific jurisdiction exists if the cause of action is related to, or arises out of, the defendant's contacts with the forum state and those contacts meet the due process standard.  *J.R. Stripling v. Jordan Production Company, LLC*, 234 F.3d 863, 871 (5th Cir. 2000) (quotations and citations omitted).  "When a court exercises personal jurisdiction over a defendant based on contacts with the forum related to the particular controversy, the court is exercising 'specific jurisdiction.'"  *Holt Oil & Gas Corporation v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986) (citations omitted), *cert. denied*, 481 U.S. 1015 (1987).  General jurisdiction, on the other hand, may be found when the nonresident's contacts with the forum are "continuous and systematic," even though the claim is unrelated to those contacts.  *Helicopteros Nacionales*, 466 U.S. at 415-16.

Under either a specific or general jurisdiction analysis, however, "the constitutional touchstone remains whether the defendant purposefully established

'minimum contacts' in the forum [s]tate."  *Burger King*, 471 U.S. at 474 (quoting

*International Shoe Company v. Washington*, 326 U.S. 310, 316 (1945)).  The

"purposeful availment" requirement of the minimum contacts inquiry "ensures that a

defendant will not be haled into a jurisdiction solely as a result of 'random,'

'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party

or a third person.'"  *Id.* at 475 (citations omitted).  A plaintiff must establish a

substantial connection between the nonresident defendant and the forum state.  *Jones

v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1068 n.9 (5th Cir.), *cert.

denied*, 506 U.S. 867 (1992); *Bearry v. Beech Aircraft Corporation*, 818 F.2d 370, 374

(5th Cir. 1987) (citing *Burger King*, 471 U.S. at 475 n.18; *McGee v. International Life

Insurance Company*, 355 U.S. 220, 223 (1957)).

A court must consider all factors when making the purposeful availment

inquiry -- "no single factor, particularly the number of contacts, is determinative."

*Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).  "[W]hether the minimum

contacts are sufficient to justify subjection of the non-resident to suit in the forum is

determined not on a mechanical and quantitative test, but rather under the particular

facts upon the quality and nature of the activity with relation to the forum state."

*Mississippi Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir. 1982);

see also *Coats v. Penrod Drilling Corporation*, 5 F.3d 877, 884 (5th Cir. 1993), *cert.

denied*, 510 U.S. 1195 (1994).  When the underlying cause of action is based on an

intentional tort, a single act by the defendant can be sufficient to establish personal jurisdiction if that act gives rise to the claim being asserted. *Lewis v. Fresne*, 252 F.3d 352, 358-59 (5th Cir. 2001); see also *FCA Investments Company v. Baycorp Holdings, Ltd.*, 48 Fed. App'x 480 (5th Cir. 2002) (finding that in a claim for the intentional tort of fraud, a single phone call into the forum state is sufficient to establish personal jurisdiction where the content of that phone call was the subject matter of the fraud claim). Here, the defendants argue that Codehost and BCP have not established the required "minimum contacts" with Texas, the forum state. Motion to Dismiss at 6-11.

### 4. *Personal Jurisdiction Over Codehost*

The plaintiffs provide, in essence, only one legal argument as to how this court has personal jurisdiction over Codehost. The plaintiffs claim that even though the loan agreement was signed by Bizri in his individual capacity, the agreement should be imputed to Codehost because Codehost was the alter ego of Bizri. To prevail on this argument, the plaintiffs must succeed in a reverse piercing of the corporate veil.[2]

In the typical case of piercing the corporate veil, the plaintiff seeks to hold an individual shareholder liable for the actions of the corporation. See *Chao v.*

---

[2] Despite the court's order requiring the plaintiffs to assert whether they were pursuing a theory of general or specific jurisdiction as to Codehost and BCP, they failed to do so. Though never referring to "reverse piercing of the corporate veil" by name, the facts asserted in the first amended complaint lead this court to this theory of specific jurisdiction.

*Occupational Safety and Health Review Commission*, 401 F.3d 355, 364 (5th Cir. 2005).

In a case involving a reverse piercing of the corporate veil, however, the plaintiff seeks

to hold the *corporation* liable for the action of its *shareholder*. *Id.*  To accomplish this

reverse piercing, the plaintiff must demonstrate that the corporation is the alter ego of

the individual shareholder. *Id.*  A corporation can be considered the alter ego of the

individual if "there is such unity between corporation and individual that the

separateness of the corporation has ceased." *Id.* (internal quotations omitted).  When

making the determination as to whether the corporate veil should be pierced, the

court is to consider the totality of the circumstances, "including the degree to which

corporate formalities have been followed and corporate and individual property have

been kept separately, the amount of financial interest, ownership and control the

individual maintains over the corporation, and whether the corporation has been used

for personal purposes." *Id.* (quoting *Permian Petroleum Company v. Petroleos Mexicanos*,

934 F.2d 635, 643 (5th Cir. 1991)).

The court finds that the plaintiffs' factual allegations make a *prima facie* case for

a reverse piercing of the corporate veil.  The first amended complaint makes the

following factual allegations:  Bizri is the majority shareholder of Codehost; Bizri

commingled his assets with those of Codehost; Bizri used corporate funds for his

personal use; Codehost conducted business without holding either directors' or

shareholders' meetings; and Codehost maintained few or no records or minutes of any

corporate proceedings.  First Amended Complaint ¶ 11.  In determining whether a

*prima facie* case for personal jurisdiction exists on a motion to dismiss, uncontroverted

factual allegations in the plaintiff's complaint must be taken as true.  *Paz v. Brush*

*Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006).  Though the defendants

challenged the sufficiency of the various affidavits filed by Seghers -- claiming lack of

personal knowledge and/or improper legal conclusions -- at no point do any of the

defendants actually challenge the veracity of the underlying factual allegations.

Accordingly, the court must accept these allegations as true.  Once these allegations

are accepted as true, the court finds that the plaintiff has established a *prima facie* case

for personal jurisdiction over Codehost.

 As stated in this court's prior order, personal jurisdiction is a waivable right.

*Insurance Corporation of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694,

702-703 (1982).  As a result, "a variety of legal arrangements" exist by which a

litigant may consent to personal jurisdiction.  *Id.* at 703.  One such legal arrangement

is a forum selection clause contained in a contract, so long as it has been freely

negotiated and is not unreasonable and unjust.  *M/S Bremen v. Zapata Off-Shore*

*Company*, 407 U.S. 1, 15 (1972).

 The loan agreement between Exponential and Bizri contains a forum selection

clause.  *See* Loan Agreement at 2, *attached to* Seghers Declaration *as* Exhibit 3.

Typically, this forum selection clause would be binding only as against the signatory

- 14 -

to the agreement -- in this case Bizri.  However, under a reverse piercing of the corporate veil assessment, the actions of Bizri can be imputed to Codehost, including Bizri's consent to the forum selection clause of the loan agreement.  Codehost presents no arguments regarding the second element of the federal personal jurisdiction inquiry -- whether it is fair and reasonable to require Codehost to litigate in this forum.  Therefore, the court finds that personal jurisdiction exists over Codehost.  The Rule 12(b)(2) motion to dismiss the plaintiffs' claims against Codehost is denied.

### 5. *Personal Jurisdiction over BCP*

The plaintiffs' allegations regarding this court's personal jurisdiction over BCP are based on theories of both general and specific jurisdiction.  According to the plaintiffs' response and supplemental response, general jurisdiction exists because BCP has sufficient continuous contacts with the State of Texas through its contacts with the forum state.  Additionally, the plaintiffs argue that specific jurisdiction exists because the causes of action directly arises from BCP's performance under the RAPS agreement.  In response, BCP avers that its contacts with the forum are insufficient to establish general jurisdiction and that the RAPS agreement cannot serve as a basis for specific jurisdiction because none of the named defendants was a party to that agreement.  The court will address only the allegations of specific jurisdiction as it proves to be dispositive on the issue of personal jurisdiction.

A defendant's minimum contacts with the forum state are sufficient to find specific jurisdiction when the dispute arises out of or is related to the defendant's contacts with the forum. *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 343 (5th Cir. 2004). Here, at least two of BCP's contacts are directly related to the underlying cause of action. First, in the RAPS agreement, BCP agreed to use money provided by three Texas limited partnerships as the capital for the investments in question. *See* RAPS Agreement at 4. The causes of action involved in this suit directly stem from its handling of that money. Furthermore, the RAPS agreement calls for BCP to use various "Galileo Funds" as the vehicle for such investments. See *id.* BCP created such funds in the form of limited partnerships organized under the laws of Texas. *See* Letter from Sam Bizri to State of Texas Corporate Filing Department (Sept. 4, 2001), *attached to* Second Supplemental Declaration of Conrad P. Seghers *as* Exhibit 4. While BCP is correct that the forum selection clause in the RAPS agreement is insufficient to establish personal jurisdiction, BCP's contacts with the State of Texas during its performance of the RAPS agreement are sufficient. The claims against BCP arise out of (or at least relate to) its contacts with the forum state. BCP, like Codehost, has presented no arguments showing that it would be unfair or unreasonable for BCP to be subject to litigation in this forum. The court finds that it has personal jurisdiction over BCP, and the Rule 12(b)(2) motion to dismiss the plaintiffs' claims against BCP is therefore denied.

## B. Motion to Dismiss -- Failure to Plead with Specificity

The defendants move to dismiss counts one and six of the first amended complaint under FED. R. CIV. P. 12(b)(6) on the ground that the plaintiffs have failed to plead these two fraud claims with the specificity required by FED. R. CIV. P. 9(b). In this court's prior order, these two fraud claims were dismissed due to their lack of specificity, but the court granted the plaintiffs the opportunity to re-plead these fraud claims. In that prior order, this court stated,

> Pleading fraud with particularity requires that a plaintiff specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent. [*Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir.), *cert. denied*, 522 U.S. 966 (1997)]; see also *Benchmark Electronics, Inc. v. J.M. Huber Corporation*, 343 F.3d 719, 724 (5th Cir. 2003) (stating that Rule 9(b) requires the plaintiff to lay out 'the who, what, when, where, and how' of the alleged fraud); *United States ex rel. Russell v. Epic Healthcare Management Group*, 193 F.3d 304, 308 (5th Cir. 1999).

Order at 14.

### 1. *Count One -- Fraud Stemming from the Loan Agreement*

With respect to count one, the first amended complaint has changed little from the original complaint. While the plaintiffs have added a paragraph regarding the alleged misrepresentations, *see* Amended Complaint ¶ 26 (reciting the "misrepresentation" identified in ¶ 16), they still fail to meet what has been described as the *minimum* requirements for pleading fraud: who, what, when, where, and how.

See *United States ex rel. Thompson v. Columbia/HCA Healthcare Corporation*, 125 F.3d 899, 903 (5th Cir. 1997) ("*At a minimum,* Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud") (emphasis added).  The amended complaint does improve upon the original complaint by identifying the who -- Bizri, the only natural defendant.  *See* Amended Complaint ¶ 16.  However, the complaint remains devoid of any reference to the "when" or "where" requirements.  The most specific allegation regarding when these misrepresentations were made states that the misrepresentations occurred "in or about 1999."  *Id.*  Such a vague and generalized allegation is insufficient to meet the particularity requirements of Rule 9(b) as interpreted by the Fifth Circuit.  See *Herrmann Holdings Ltd. v. Lucent Technologies Inc.*, 302 F.3d 552, 564-65 (5th Cir. 2002) (stating the Fifth Circuit "interprets Rule 9(b) strictly").

Furthermore, the plaintiffs fail to allege "how" the statements were misrepresentations.  As an example, the amended complaint states, "Bizri provided Seghers with what he claimed was a valuation of [Codehost] dated October 7, 1999 from [a] CPA firm . . . .  The purported valuation of [Codehost] was fifty million dollars ($50,000,000).  Seghers is informed and believes, and thereon alleges that the valuation was false."  Amended Complaint ¶ 16.  Even if the court were to overlook the "when" and "where" elements necessary to satisfy the requirements for pleading fraud, the court cannot get around the "how" element.  Nowhere do the plaintiffs

allege "how" this purported valuation was false.  While the plaintiffs aver that upon

information and belief they consider the valuation to have been false, they fail set

forth any facts upon which the information and belief was formed.  See *United States*

*ex rel. Willard v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 385 (5th Cir. 2003)

("Although . . . fraud may be pleaded on information and belief under such

circumstances, . . . this exception 'must not be mistaken for license to base claims of

fraud on speculation and conclusory allegations.'  . . .  [E]ven where allegations are

based on information and belief, the complaint must set forth a factual basis for such

belief") (internal citations omitted).

Accordingly, the defendants' motion to dismiss count one for failure to state a

claim is granted.  Because the plaintiffs did not request the opportunity to re-plead

count one in the event of dismissal and because this court has previously granted the

plaintiffs an opportunity to re-plead, count one is dismissed.  See *id.* at 387.

### 2. *Count Six -- Fraud Stemming from the RAPS Agreements*

Unlike the fraud claim in count one, the fraud claim in count six meets the

standard for pleading with particularity.  The plaintiffs have sufficiently pleaded the

who, what, when, where, and how elements that were previously missing from this

allegation of fraud.  *See* Amended Complaint ¶ 53 ("From March through November

2001, in the Galileo account statements delivered by Bizri and BCP . . . to Seghers

and his Funds . . . in the second week of each month, reporting activity in the

- 19 -

preceding month, Bizri, BCP and Galileo intentionally misrepresented and overstated the value of the Funds' assets by millions of dollars").

The defendants also argue that count six -- which indicates it is being asserted against all defendants -- should be dismissed as to Codehost because no allegations of fraud against Codehost have been alleged in this count. The proper inquiry on a Rule 12(b)(6) motion to dismiss is whether the plaintiff can prove any set of facts to be able to recover against the defendant. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court cannot say, on the present pleadings, that no set of facts exists under which the plaintiffs could prevail. If the plaintiffs prevail on their reverse piercing of the corporate veil theory (as discussed above), it is possible that Codehost could be held liable for the allegedly fraudulent actions of Bizri. Therefore, the motion to dismiss count six for failure to state a claim is denied as to all defendants.

## C.  Motion to Dismiss -- Failure to State a Claim

### 1.  *Count Three -- Contract Claim for Failure to Repay Loan Agreement*

Previously, this court dismissed the contract claim for the first of two $500,000 payments made by Seghers to Bizri because that claim was barred by limitations.[3]  However, the contract claim for the second payment survived and is reasserted in the amended complaint. According to the amended complaint, the

---

[3]     In the court's prior order it was determined that the contract claim with regards to the first instalment of the loan agreement was barred by the statute of limitations because repayment by Bizri on the first instalment was due more than four years prior to the date of filing the original complaint. *See* Order at 16-17.

plaintiffs completed their performance under the terms of the contract, but Bizri and Codehost failed to repay the loan.  The defendants note that this cause of action is alleged against all defendants, though there is no mention of BCP within this count. Further, the defendants aver that the contract claim cannot be brought against Codehost because only Bizri, not Codehost, was a party to the loan agreement.  The defendants also seek dismissal, on limitations grounds, of the breach of contract claim for the second payment of $500,000.

To the extent that the plaintiffs name BCP as a defendant in count three, the defendants' motion to dismiss must be granted.  Based on the pleadings, the court finds that there is no possibility of recovery by the plaintiffs against BCP on the alleged breach of the loan agreement.  However, the motion to dismiss as to Bizri and Codehost is denied.  The defendants do not challenge the contract claim with regard to Bizri; however, they do challenge it with regard to Codehost, arguing that the contract is unenforceable against Codehost because Codehost was not a party to the contract.  Again, under the proper Rule 12(b)(6) standard, the court should grant the motion to dismiss only if the plaintiffs could prove no set of facts under which they could recover.  *Conley,* 355 U.S. at 45-46.  As discussed above in the section concerning the exercise of personal jurisdiction over Codehost, there is a possibility of recovery by the plaintiffs against Codehost on the breach of contract claim.  That is, if the plaintiffs are able to prove that Codehost was the alter ego of Bizri, then the

plaintiffs may be able to engage in a reverse piercing of the corporate veil and impute to Codehost the contract signed by Bizri in his personal capacity.  Accordingly, the motion to dismiss the claim against Codehost in count three is denied.

With respect to the defendants' statute of limitations defense, the motion to dismiss is denied.  While the court can consider a statute of limitations argument on a Rule 12(b)(6) motion to dismiss, such a motion cannot be granted unless the limitations defense is clear on the face of the complaint.  See *Jones v. Alcoa, Inc.*, 399 F.3d 359, 366 (5th Cir. 2003), *cert. denied*, 540 U.S. 1161 (2004).  Here, the court is unable to find on the face of the complaint a clear indication that the second payment of $500,000 is barred by the statute of limitations.  Accordingly, the defendants' motion to dismiss the breach of contract claim based on the statute of limitations defense is denied.

### 2.  *Count Four -- Money Lent Stemming from the Loan Agreement*

As with count three, this court's prior order dismissed the money lent cause of action with respect to the first of the two $500,000 payments made by Seghers and/or Exponential to Bizri; however, the plaintiffs' claim regarding the second payment remains.  As with the breach of contract claim, the defendants aver that the money lent cause of action is not viable as against BCP or Codehost because neither was a party to the loan agreement.  Also, the defendants argue that the statute of limitations bars this claim as against all defendants.  For the same reasons stated

above regarding count three, the court grants the defendants' Rule 12(b)(6) motion to dismiss as to BCP, but denies the motion to dismiss as to Codehost and Bizri.

### 3. *Counts Six and Seven -- Fraud from the RAPS Agreement and Indemnification*

The defendants argue on this Rule 12(b)(6) motion to dismiss that counts six and seven of the amended complaint should be dismissed because these claims are barred by the applicable statute of limitations. The court disagrees. Again, to grant a Rule 12(b)(6) motion to dismiss based on a statute of limitations defense, the defense must be clear on the face of the complaint. *Jones*, 339 F.3d at 366. Here, the defendants request that the court consider an email transmitted by Seghers more than four years before the date that this suit commenced as evidence of when Seghers had knowledge of the allegations included in the first amended complaint. Motion to Dismiss at 13. Such evidence is not properly before the court to consider on a pre-answer motion to dismiss. Nothing on the face of the complaint indicates a date on which the plaintiffs knew, or should have known, of the facts alleged in counts six and seven of the amended complaint. Accordingly, the motion to dismiss counts six and seven on statute of limitations grounds is denied.

### III.  CONCLUSION

For the reasons set forth above, the defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part. The defendants' motion to dismiss all claims asserted by plaintiff Exponential is **DENIED**. The defendants' Rule 12(b)(2)

motion to dismiss all claims against Codehost and BCP is **DENIED**.  The defendants'

motion to dismiss count one of the amended complaint is **GRANTED**.  The motion

to dismiss count three and four of the amended complaint is **GRANTED** as to

defendant BCP and **DENIED** as to defendants Bizri and Codehost.  The defendants'

motion to dismiss count six and seven of the amended complaint is **DENIED**.

  **SO ORDERED**.

March 7, 2007.

A. JOE FISH

CHIEF JUDGE